# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOSEPH VERRIER,

      Plaintiff,

v.                                                       Case No. 12-CV-1240

MATT JONES, JONATHON DICKEY,
and WILLIAM MARTIN,

      Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is now before the Court on the defendant's motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support

a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

## FACTS

When Verrier filed this action, he was a prison inmate incarcerated by the Wisconsin Department of Corrections ("DOC"). Although he has since been released, the Prison Litigation Reform Act applies to this case.

On March 26, 2012, Verrier was terminated from the Sex Offender Treatment Program ("the Program"). The Program requires all men to sign a contract prohibiting all third party contact and direct contact with any minors, including their own children, irrespective of who their victims were or the nature of their offenses. This requirement is not enforced for women in DOC sex offender treatment programs. Verrier spent an additional year incarcerated because he was terminated from the Program.

Verrier was allowed to proceed on retaliation claims against each of the defendants in his individual capacity regarding his termination from the Program, as well as equal protection claims against each of the defendants in his official capacity regarding the different policies applied to male and female sex offenders in treatment programs.

1. *Inmate Complaint Review System*

The DOC maintains an Inmate Complaint Review System ("ICRS") in Wisconsin adult correctional institutions as a system for complaints about prison conditions or the actions of prison officials. Before an inmate may commence a civil action, the inmate shall exhaust all administrative remedies that the DOC has promulgated by rule. Wis. Admin. Code § DOC 310.05.

An inmate begins the ICRS complaint process by filing a complaint with the Institution Complaint Examiner ("ICE") at his institution. After receiving an offender complaint, the intake person at the ICE office either returns the complaint to the inmate or forwards it to the ICE for action. If a complaint is not returned, the ICE processes it. In that process, the ICE can decide to reject the complaint or make a recommendation to the reviewing authority to dismiss or affirm the complaint. The reviewing authority means the warden, bureau director, administrator, or designee who is authorized to review and decide an inmate complaint at the institution level.

The ICE may reject a complaint for the following reasons: (a) the inmate submitted the complaint solely for the purpose of harassing or causing malicious injury to one or more of the department's employees, agents, independent contractors, or any other person; (b) the inmate does not raise a significant issue regarding rules, living conditions, or staff actions affecting the institution environment; (c) the inmate does not allege sufficient facts upon which redress may be made; (d) the inmate submitted the complaint beyond 14 calendar days from the date of the occurrence giving rise to the complaint and provides no good cause for the ICE to extend the time limits; (e) the issue raised in the complaint does not personally affect the inmate; (f) the issue is moot; (g) the issue has already been addressed through the inmate's prior use of the ICRS; or (h) the issue raised is not within the scope of the ICRS as defined in § DOC 310.08. Wis. Admin. Code § DOC 310.11(5).

"An inmate may appeal a rejected complaint within 10 calendar days only to the appropriate reviewing authority who shall only review the basis for the rejection of the complaint. The reviewing authority's decision is final." Wis. Admin. Code § DOC 310.11(6). The Corrections Complaint Examiner ("CCE") does not review rejected complaints. Wis. Admin. Code § DOC 310.13(3).

If a complaint is not returned or rejected, and an adverse decision is subsequently made on an ICRS complaint by the reviewing authority, the inmate must then appeal the reviewing authority's decision by filing a written request for review with the CCE. Wis. Admin. Code § DOC 310.07(4), (6), and (7) and 310.13. A final decision on the complaint is then made by the Office of the Secretary of the DOC.

  2. *Verrier's Use of the ICRS*

On March 27, 2012, Verrier filed Offender Complaint No. OSCI-2012-6475 regarding a document seized from Verrier's room by DOC staff. This complaint was rejected as moot because the document at issue had been returned to Verrier. Verrier did not request review of the rejection. The document seized was a letter Verrier was drafting to his attorney regarding retaliatory behavior and derogatory comments made by DOC staff; it outlined the events related to Verrier's termination from the Program.

Verrier used the Freedom of Information Act ("FOIA") to request information from the DOC about potential differences between treatment programs for men and women. Verrier signed Offender Complaint No. OSCI-2012-11834 on June 7, 2012, and the DOC received the complaint on June 8, 2012. On June 13, 2012, the ICE rejected this complaint as untimely, and Verrier requested review of the rejected complaint. In his request for review, Verrier argued that he brought his complaint as soon as he could verify a basis for it and that any delay was due to the DOC's slow response to his request for information. On June 22, 2012, the reviewing authority determined that the complaint was appropriately rejected by the ICE.

In July and August 2012, Verrier and his family made requests for information from the DOC pursuant to FOIA and open records laws regarding the potential differences between treatment programs for men and treatment programs for women. The DOC failed to provide Verrier with the information he requested. Verrier also wrote correspondence to Warden Judy

4

Smith, the DOC, and the Wisconsin Attorney General challenging his termination from the Program as retaliatory and asserting the restrictions imposed upon men in the Program were violations of his equal protection rights.

On September 28, 2012, the ICE acknowledged receipt of Offender Complaint No. OSCI-2012-20593, in which Verrier complained about the refusal of staff to change the record in his Program documentation. The ICE rejected the complaint the same day because it was a challenge to Verrier's inmate record, which is outside the scope of the ICRS. Verrier did not appeal the rejection of this complaint.

On October 17, 2012, Verrier finally received responses to his FOIA and open record requests. After receiving the information regarding unequal treatment on October 17, 2012, Verrier filed Offender Complaint No. OSCI-2012-22204 on October 22, 2012. The ICE acknowledged receipt of this complaint, in which Verrier again complained about his termination from the Program, but the complaint was rejected as untimely the same day. The ICE addressed Verrier's good cause argument in the rejection. The ICE found no good cause because Verrier had not challenged the termination within 14 days of when it happened. Once again, Verrier did not request review of the rejected complaint. He attempted to file two appeals to the CCE, but they were rejected.

Finally, on January 30, 2013, the ICE acknowledged receipt of Offender Complaint No. OSCI-2013-2141, which addressed Verrier's attempt to amend his medical record. This was rejected as a challenge to an inmate medical record, which is outside the scope of the ICRS. Verrier did not request review of the rejection.

## ANALYSIS

The defendants argue that they are entitled to summary judgment because Verrier failed to exhaust his administrative remedies with regard to his claims before filing this action. Verrier

5

argues that he filed the required complaints and appeals and that there was no further action for him to take. In order to determine whether Verrier has properly exhausted his administrative remedies, I must consider Verrier's use of the ICRS.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(e). The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 548 U.S. 81, 87, 92 (2006). It is the defendant's burden to establish that the plaintiff has failed to exhaust administrative remedies. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002).

To the extent that Verrier suggests that the letters he wrote to the warden, the attorney general, and the DOC constitute exhaustion, he is mistaken. Correspondence is not a substitute for the procedures set forth in Chapter 310 of the Wisconsin Administrative Code.

After his termination from the Program, Verrier filed five separate offender complaints. He failed to exhaust at least the last three of those complaints because he did not request review of the rejections. These include (1) Offender Complaint No. OSCI-2012-20593, which was received and rejected on September 28, 2012; (2) Offender Complaint No. OSCI-2012-22204, which was received and rejected on October 22, 2012; and (3) Offender Complaint No. OSCI-2013-2141, which was received and rejected on January 30, 2013. Although Verrier attempted to file two appeals to the CCE regarding Offender Complaint No. OSCI-2012-22204, that is not the proper procedure. An inmate may request that the reviewing authority review the rejection of a complaint, but the CCE does not have jurisdiction over rejected complaints. Wis. Admin.

6

Code § DOC 310.13(3). The reviewing authority cannot be bypassed, and the decision of the reviewing authority is final. Wis. Admin. Code § DOC 310.11(6). The Court will discuss Verrier's other two offender complaints in more depth.

Additionally, Offender Complaint No. OSCI-2013-2141 was filed after Verrier filed this case. Even if Verrier had filed an appeal from the rejection of that complaint, it could not have constituted exhaustion because exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999)).

On March 27, 2012, the day after he was terminated from the Program, Verrier filed Offender Complaint No. OSCI-2012-6475. He complained that a letter to his attorney had been confiscated on March 23, 2012. Although the substance of the letter seized addressed claims against officers and his treatment in the Program, the complaint simply complained about the seizure of the letter. This complaint was rejected as moot because the letter had been returned to Verrier, and Verrier did not appeal the rejection of the complaint.

I note that the only issue that the reviewing authority can consider on appeal is whether the complaint was properly rejected. If Verrier had indeed received his letter back by the time his complaint was rejected, the complaint was moot so there was no reason to challenge the rejection.

Even if I were to overlook the requirement that Verrier request review of a rejected complaint, there remains the question of whether this complaint was sufficient to put the defendants on notice that Verrier objected to his termination from the Program and that he believed the termination was retaliatory and/or discriminatory. It was not. Most importantly, the complaint was signed on March 26, 2012, the day Verrier was terminated from the Program, and lists the date of incident as March 23, 2012, three days before Verrier's termination from

the Program. The timing, along with the complaint's exclusive focus on the seized letter, means that this complaint did not constitute the exhaustion of Verrier's administrative remedies with regard to his claims in this case.

Finally, I must consider whether Offender Complaint No. OSCI-2012-11834 constitutes the proper exhaustion of Verrier's administrative remedies. This is the only complaint for which Verrier correctly followed the appeal procedure. The complaint was rejected as untimely by the ICE and the reviewing authority. Neither found good cause for the filing of this complaint more than 14 days after Verrier's termination from the Program.

The defendants argue that any claim regarding Verrier's termination needed to be filed within 14 days of his termination from the Program. Verrier maintains that he had good cause for this complaint to be filed more than 14 days after his termination because he filed the complaint as soon as he obtained information regarding the different rules for men and women in sex offender treatment programs regarding contact with children, especially their own. Verrier also argues that the retaliation and disparate treatment were ongoing conditions until his release and, as such, his complaint was timely. *See Edwards v. Schrubbe*, 807 F.Supp.2d 809 (E.D. Wis. 2011).

Although the defendants suggest that there is no dispute that Offender Complaint No. OSCI-2012-11834 was untimely, they base this emphasis on the characterization of Verrier's claims as simply challenging his termination from the Program, a discrete event. They overlook Verrier's broader Equal Protection challenge to the different rules regarding contact with children for male and female sex offenders in treatment programs. Verrier brought that claim as soon as he discovered the difference in the rules. Verrier could not make the ICE or the reviewing authority find good cause to allow his complaint to proceed on the merits, but he did do what he could to exhaust his administrative remedies regarding that complaint. He requested

8

review of the ICE's decision and then received the final decision of the reviewing authority. This is sufficient to properly exhaust Verrier's Equal Protection claim.

The defendants are correct, though, that Verrier's claim that his termination from the Program was retaliatory was not properly exhausted. Unlike the Equal Protection claim, Verrier could have brought this claim challenging his termination within 14 days of his termination from the Program. This conclusion is supported by Verrier's own argument that the letter that was seized before his termination contained assertions of retaliation. In his brief, Verrier has attempted to broaden the scope of his retaliation claim by arguing that he continued to be retaliated against throughout his incarceration. But that is not the claim on which Verrier was allowed to proceed.

For the foregoing reasons, the Court concludes that Verrier exhausted his administrative remedies with regard to his Equal Protection claim, but failed to exhaust his administrative remedies regarding his individual capacity claims against the defendants for retaliatory termination from the Program. What remains is an official capacity claim that limits Verrier to injunctive relief. *See Omosegbon v. Wells*, 335 F.3d 668, 672-73 (7th Cir. 2003).

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment (Docket # 37) be and hereby is **GRANTED IN PART AND DENIED IN PART**.

**IT IS ALSO ORDERED** that Verrier's individual capacity retaliation claims against the defendants be and hereby are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the *Pavey* hearing set for July 3, 2014, at 10:00 be and hereby is **CANCELED**. The Court will contact the parties to schedule a status conference.

Dated at Milwaukee, Wisconsin this 1st day of July, 2014.

BY THE COURT:

*s/ Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge